UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | INFORMATION NO. 4:20-cr-46 |
| v. | ) | |
| | ) | 18 U.S.C. § 1349 |
| | ) | Attempt and Conspiracy |
| PAUL PENN, | ) | |

THE UNITED STATES ATTORNEY CHARGES THAT:

Introduction

At all times material to this Information:

1. From around March 2020, and continuing until in or about April 5, 2020, in the midst of the COVID-19 global pandemic, Paul Penn and other unnamed co-conspirators, known and unknown, did knowingly and willfully, combine, conspire, confederate, and agree with each other to attempt to execute a scheme and artifice to defraud a foreign government in connection with an attempted sale of 50,000,000 3M Model 1860 Respirator Masks that, in truth and fact, did not exist, which was disrupted by the United States Secret Service.

**COUNT ONE**
18 U.S.C. § 1349
*Attempt and Conspiracy*

2. The allegations of paragraph 1 of this Information are hereby realleged and incorporated as if fully set forth herein.

3. From around March 2020, and continuing until in or about April 5,

2020, the exact dates being unknown, in the Southern District of Georgia and elsewhere, Penn and other unnamed co-conspirators, known and unknown, did knowingly and willfully, combine, conspire, confederate, and agree with each other to attempt to execute a scheme and artifice, and to conceal that scheme or artifice, to defraud a foreign government and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of attempting to execute this scheme, caused to be transmitted by means of wire communication in interstate commerce, in violation of Section 1343 of Title 18 of the United States Code, all in violation of Section 1349 of Title 18 of the United States Code.

## Purpose of the Scheme

4. It was the purpose of the scheme for Penn and others to enrich themselves and maximize profits at the expense of a foreign government.

## Manner and Means of the Scheme

5. It was part of the scheme that, beginning at least as early as March 30, 2020, the exact date being unknown, and continuing thereafter until at least April 5, 2020, Penn and others, known and unknown, were part of a scheme to take advantage of the COVID-19 global pandemic by offering 3M Model 1860 Respirator Masks (3M Masks) that did not exist in exchange for exorbitant amounts of money.

## Overt Acts

6. In furtherance of this attempt, Penn and his co-conspirators committed one or more of the following overt acts,

a. On or about March 30, 2020, Penn, though his company, Spectrum Global Holdings, LLC, agreed to act as a middle man for Individual #1 to sell 50 million 3M Model 1860 Respirator Masks ("N-95 Masks") to a foreign government.

b. Under the deal, Penn was to receive a small percentage to act as a middle-man, while the majority of the proceeds were to go to Penn's conspirators, known and unknown, including Individual #1.

c. Using wire communications in interstate commerce, Penn represented that the N-95 Masks were owned by a group in which he was associated.

d. Penn knew, as that term is defined by law, that he and the group in which he was associated, including Individual #1, did not have access to 50,000,000 N-95 Masks capable of being shipped immediately to the foreign government.

e. In the midst of an ongoing pandemic causing health and financial struggles for front-line health professionals, the military, and communities around the world, Penn, Individual #1, Individual #2, and others known and unknown to Penn, negotiated a price over 500% higher than the previous normal market value for N-95 Masks.

f. Penn conspired with Individual #2, who represented herself to be affiliated with a law firm in Georgia. Individual #2 arranged for a bank account in Georgia to receive the funds wired from the foreign

government, which she represented was a "trust account" of the law firm.

g. Individual #2 does not have an active license to practice law in the State of Georgia or elsewhere, nor was she a member or employee of the law firm whose "trust account" was to be used.

h. After receiving questions from the foreign government about the products at issue in the transaction, on March 30, 2020, Penn replied with specific information, including information about the sizing of the N-95 Masks even though, as Penn well knew, he did not have actual control of any masks, nor had he ever seen 50,000,000 N-95 Masks.

i. On April 1, 2020, the foreign government, through a representative, demanded assurances from Penn and Individual #1 about the proof of product, details on size of the shipment, and confirmation about compliance with United States export requirements.

j. On April 2, 2020, Penn, in a text message, demanded that the foreign government would wire "cash" to Individual #1's account, instead of the previously discussed guarantee letter.

k. Individual #1, for whom Penn was to act as a middle-man, was located in Texas and aggressively pushed for the transaction with the foreign government to close quickly.

l. During that same time period, in reliance on Penn's prior false representations, the foreign government wired approximately $317

million to Citibank with the intention that the funds would ultimately be transferred to Penn, Individual #1, and others for the purchase of the N-95 Masks.

m. Later on April 2, 2020, the foreign government, through a representative, again demanded basic information about the status of the goods.

n. Penn did not respond because, as he well knew, he did not have access to 50 million N-95 Masks.

All in violation of Title 18, United States Code, Section 1349.

_____
Bobby L. Christine
United States Attorney

_____
J. Thomas Clarkson
Assistant United States Attorney
*Lead Counsel

_____
Karl Knoche
Assistant United States Attorney
Chief, Criminal Division

_____
Patrick J. Schwedler
Assistant United States Attorney
*Co-lead Counsel