UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA ) 
) 
v. ) CASE NO: 4:20-CR-46
) 
PAUL PENN, ) 
)

## PLEA AGREEMENT

Defendant Paul Penn, represented by his counsel William D. Dillon, and the United States of America, represented by Assistant United States Attorneys J. Thomas Clarkson and Patrick Schwedler have reached a plea agreement in this case. The terms and conditions of that agreement are as follows.

1.    Guilty Plea

Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to Count One of the Information, which charges 18 U.S.C. § 1349.

2.    Elements and Factual Basis

The elements necessary to prove the offense charged in Count One are (1) two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, as charged in the Information; and (2) the Defendant knew the unlawful purpose of the plan and willfully joined in it.

Defendant agrees that he is, in fact, guilty of this offense. He agrees to the accuracy of the following facts, which satisfy each of the offense's required elements:

From around March 2020, and continuing until in or about April 5, 2020, the exact dates being unknown, in the Southern District of Georgia and elsewhere, Paul Penn and other unnamed co-conspirators, known and unknown, did knowingly and willfully, combine, conspire, confederate, and agree with each other to attempt to execute a scheme and artifice, and to conceal that scheme or artifice, to defraud a foreign government, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of attempting to execute the scheme, caused to be transmitted by means of wire communication in interstate commerce, in violation of Section 1343 of Title 18 of the United States Code, all in violation of Section 1349 of Title 18 of the United States Code.

In furtherance of this scheme, and to effect the objects thereof, the Defendant and his co-conspirators committed one or more of the following overt acts,

- On or about March 30, 2020, Penn, though his company, Spectrum Global Holdings, LLC, agreed to act as a middle man for Individual #1 to sell 50 million 3M Model 1860 Respirator Masks ("N-95 Masks") to a foreign government.

- Under the deal, Penn was to receive a small percentage to act as a middle-man, while the majority of the proceeds were to go to Penn's conspirators, known and unknown, including Individual #1.

- Using wire communications in interstate commerce, Penn represented that the N-95 Masks were owned by a group in which he was associated.

- Penn knew, as that term is defined by law, that he and the group in which he was associated, including Individual #1, did not have access to 50,000,000 N-95 Masks capable of being shipped immediately to the foreign government.

- Penn conspired with Individual #2, who represented herself to be affiliated with a law firm in Georgia. Individual #2 arranged for a bank account in Georgia to receive the funds wired from the foreign government, which she represented was a "trust account" of the law firm.

- Individual #2 does not have an active license to practice law in the State of Georgia or elsewhere, nor was she a member or employee of the law firm whose "trust account" was to be used.

- In the midst of an ongoing pandemic causing health and financial struggles for front-line health professionals, the military, and communities around the world, Penn, Individual #1, Individual #2, and others known and unknown to Penn, negotiated a price over 500% higher than the previous normal market value for N-95 Masks.

- After receiving questions from the foreign government, about the products at issue in the transaction, on March 30, 2020, Penn replied with specific information, including information about the sizing of the N-95 Masks even though, as Penn well knew, he did not have any masks.

- On April 1, 2020, the foreign government, through a representative,

demanded assurances from Penn and Individual #1 about the proof of product, details on size of the shipment, and confirmation about compliance with United States export requirements.

- On April 2, 2020, Penn, in a text message, demanded that the foreign government would wire "cash" to Individual #1's account, instead of the previously discussed guarantee letter.

- Individual #1, for whom Penn was to act as a middle-man, was located in Texas and aggressively pushed for the transaction with the foreign government to close quickly.

- Later that morning, in reliance on Penn's prior false representations, the foreign government wired the requested sum to Citibank with the intention of that money being transferred to Penn and Individual #1 and others for the purchase of the N-95 Masks.

- Later on April 2, 2020, the foreign government, through a representative, again demanded basic information about the status of the goods.

- Penn did not respond because, as he well knew, he did not have access to 50 million N-95 Masks.

3. <u>Possible Sentence</u>

Defendant's guilty plea will subject him to the following maximum possible sentence: 20 years' imprisonment, 3 years' supervised release, a $250,000 fine, such restitution as may be ordered by the Court, and forfeiture of all forfeitable assets.

4

The Court additionally must impose a $100 special assessment per count of conviction.

4.    Agreed Sentence

The Government and the defendant agree that a specific sentence of less than six months of incarceration would be appropriate in this case. Consequently, this plea agreement is being offered to the Court pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.

The Court may accept or reject the plea agreement. If the Court accepts the plea agreement, the Court must sentence Defendant in accordance with the disposition provided for in this plea agreement. If the Court rejects this plea agreement, the Court must allow Defendant the opportunity to withdraw his plea and must advise the defendant that if he persists in a guilty plea the disposition of the case may be less favorable to Defendant than is contemplated by this plea agreement.

5.    Court's Use of Sentencing Guidelines

The Court is obligated to use the United States Sentencing Guidelines to calculate the applicable guideline range for Defendant's offense. The Sentencing Guidelines are advisory; the Court is not required to impose a sentence within the range those Guidelines suggest. The Court will consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), in determining the Defendant's sentence. The Sentencing Guidelines are based on all of Defendant's relevant conduct, pursuant to U.S.S.G.

§ 1B1.3, not just the conduct underlying the particular Count or Counts to which Defendant is pleading guilty.

6.     Agreements Regarding Sentencing Guidelines

    a.     Use of Information

Nothing in this agreement precludes the government from providing full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guidelines range.

    b.     Acceptance of Responsibility

If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the government will move for an additional one-level reduction in offense level pursuant to Section 3E1.1(b) based on Defendant's timely notification of his intention to enter a guilty plea.

7.     Cooperation

    a.     Complete and Truthful Cooperation Required

Defendant must provide full, complete, candid, and truthful cooperation in the investigation and prosecution of the offenses charged in his Information and any related offenses. Defendant shall fully and truthfully disclose his knowledge of those offenses and shall fully and truthfully answer any question put to him by law enforcement officers about those offenses.

This agreement does not require Defendant to "make a case" against any particular person. His benefits under this agreement are conditioned only on his

cooperation and truthfulness, not on the outcome of any trial, grand jury, or other proceeding.

b.    Motion for Reduction in Sentence Based on Cooperation

The government, in its **sole discretion**, will decide whether Defendant's cooperation qualifies as "substantial assistance" pursuant to U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35 and thereby warrants the filing of a motion for downward departure or reduction in Defendant's sentence. If such a motion is filed, the Court, in its sole discretion, will decide whether, and to what extent, Defendant's sentence should be reduced. The Court is not required to accept any recommendation by the government that the Defendant's sentence be reduced.

8.    Forfeiture

a.    Defendant agrees to forfeit his interest in any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the Title 18 offense to which he has agreed to plead guilty, and any property used, or intended to be used, in any manner or part, to commit, or facilitate the commission of that offense, the "Subject Property").

b.    Defendant waives and abandons all right, title, and interest in the Subject Property. Defendant agrees to take all steps requested by the government to facilitate transfer of title of the Subject Property to the government. Defendant further agrees not to file any claim, answer, or petition for remission or mitigation in any administrative or judicial proceeding pertaining to the Subject Property. If any such document has already been filed, Defendant hereby withdraws that filing.

c. Defendant agrees to hold the government and its agents and employees harmless from any claims made in connection with the seizure, forfeiture, or disposal of property connected to this case. Defendant further agrees to waive the requirements of the Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d. Defendant waives and abandons his interest in any other property that may have been seized in connection with this case. Additionally, Defendant waives any and all challenges on any grounds to the seizure, forfeiture, and disposal of any property seized in connection with this case. Defendant specifically agrees to waive any challenges arising under the Double Jeopardy Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment.

9. Financial Obligations and Agreements

a. Restitution

The amount of restitution ordered by the Court shall include restitution for the full loss caused by Defendant's total criminal conduct. Restitution is not limited to the specific counts to which Defendant is pleading guilty. Any restitution judgment is intended to and will survive Defendant, notwithstanding the abatement of any underlying criminal conviction.

b.    Special Assessment

Defendant agrees to pay a special assessment in the amount of $100, payable to the Clerk of the United States District Court, which shall be due immediately at the time of sentencing.

c.    Release of Appearance Bond

Defendant authorizes the Clerk of the United States District Court to release the funds posted as security for an appearance bond in this case to satisfy any of the financial obligations including forfeiture imposed by judgment of the Court in this case.

d.    Required Financial Disclosures

By the date that Defendant enters a guilty plea, Defendant shall complete a financial disclosure form listing all his assets and financial interests, whether held directly or indirectly, solely or jointly, in his name or in the name of another. Defendant shall sign the financial disclosure form under penalty of perjury and provide that form to the Financial Litigation Unit of the United States Attorney's Office and to the United States Probation Office. Defendant authorizes the United States to obtain credit reports on Defendant and to share the contents of those reports with the Court and the United States Probation Office. Defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the United States Probation Office.

e.    Financial Examination

Defendant will submit to an examination under oath on the issue of his financial disclosures and assets if deemed necessary by the United States. Such examination will occur not later than 30 days after the entry of Defendant's guilty plea.

f.    No Transfer of Assets

Defendant certifies that he has made no transfer of assets in contemplations of this prosecution for the purpose of evading or defeating financial obligations or forfeiture created by this Agreement or that may be imposed upon him by the Court at sentencing. Defendant promises that he will make no such transfers in the future.

h.    Material Change in Circumstances

Defendant agrees to notify the United States of any material change in circumstances, as described in 18 U.S.C. § 3664(k), that occurs prior to sentencing in this case. Such notification will be made within seven days of the event giving rise to the changed circumstances, and in no event later than the date of sentencing.

i.    Enforcement

Any payment schedule imposed by the Court is without prejudice to the United States to take all actions and remedies available to it to collect the full amount of the financial obligations imposed by the judgment of the Court in this case. Defendant understands and agrees that the financial obligations and forfeiture imposed by the judgment of the Court in this case will be placed on the Treasury Offset Program so that any federal payment that Defendant receives may be offset and applied to the

judgment debt without regard to or affecting any payment schedule imposed by the Court.

10. Waivers

    a.    Waiver of Appeal

Defendant entirely waives his right to a direct appeal of his conviction and sentence on any ground (including any argument that the statute to which the defendant is pleading guilty is unconstitutional or that the admitted conduct does not fall within the scope of the statute). The only exceptions are that the Defendant may file a direct appeal of his sentence if (1) the court enters a sentence above the statutory maximum, (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing; or (3) the Government appeals the sentence. Absent those exceptions, Defendant explicitly and irrevocably instructs his attorney not to file an appeal.

    b.    Waiver of Collateral Attack

Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion. The only exception is that Defendant may collaterally attack his conviction and sentence based on a claim of ineffective assistance of counsel.

    c.    FOIA and Privacy Act Waiver

Defendant waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any record pertaining to the investigation or prosecution of this case under the

authority of the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, and all subsequent amendments thereto.

d.     Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 Waiver

Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence ordinarily limit the admissibility of statements made by a defendant during the course of plea discussions or plea proceedings. Defendant knowingly and voluntarily waives the protections of these rules. If Defendant fails to plead guilty, or his plea of guilty is later withdrawn, all of Defendant's statements in connection with this plea, and any leads derived therefrom, shall be admissible for any and all purposes.

11.     Defendant's Rights

Defendant has the right to be represented by counsel, and if necessary have the court appoint counsel, at trial and at every other critical stage of the proceeding. Defendant possesses a number of rights which he will waive by pleading guilty, including: the right to plead not guilty, or having already so pleaded, to persist in that plea; the right to a jury trial; and the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.

12.     Satisfaction with Counsel

Defendant has had the benefit of legal counsel in negotiating this agreement. Defendant believes that his attorney has represented him faithfully, skillfully, and

diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney.

13. Breach of Plea Agreement

If Defendant fails to plead guilty, withdraws or attempts to withdraw his guilty plea, commits any new criminal conduct following the execution of this agreement, or otherwise breaches this agreement, the government is released from all of its agreements regarding Defendant's sentence, including any agreements regarding the calculation of Defendant's advisory Sentencing Guidelines. In addition, the government may declare the plea agreement null and void, reinstate any counts that may have been dismissed pursuant to the plea agreement, and/or file new charges against Defendant that might otherwise be barred by this plea agreement. Defendant waives any statute-of-limitations or speedy trial defense to prosecutions reinstated or commenced under this paragraph.

14. Entire Agreement

This agreement contains the entire agreement between the government and Defendant.

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

_____
Date

Karl I. Knoche
Chief, Criminal Division

6/2/2020
Date

J. Thomas Clarkson (by express permission — PJS)

J. Thomas Clarkson
Assistant United States Attorney

6/2/2020
Date

Patrick J. Schwedler
Assistant United States Attorney

14

I have read and carefully reviewed this agreement with my attorney. I understand each provision of this agreement, and I voluntarily agree to it. I hereby stipulate that the factual basis set out therein is true and accurate in every respect.

05-11-20
Date

Paul Penn

I have fully explained to Defendant all of his rights, and I have carefully reviewed each and every part of this agreement with him. I believe that he fully and completely understands it, and that his decision to enter into this agreement is an informed, intelligent, and voluntary one.

5.11. 2020
Date

Counsel for Defendant
William D. Dillon